IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TODD SCHUTZEUS,                        )
                                       )
            Plaintiff,                 )
                                       )     2:17-cv-412-NR
      v.                               )
                                       )
PENNSYLVANIA BOARD OF                  )
PROBATION and PAROLE, et al.,          )
                                       )
            Defendants.                )
                                       )

## OPINION

**J. Nicholas Ranjan, United States District Judge**

*Pro se* Plaintiff Todd Schutzeus was convicted in Pennsylvania state court of rape and other sexual-deviant crimes involving minors. He was sentenced to seven years' imprisonment, plus a period of probation. He served his seven years and was released. While on probation, he visited his minor nieces, which he claimed was an innocent mistake. The trial judge didn't think so. That judge found that this violated his terms of probation. He sentenced Mr. Schutzeus to up to 50 years in prison and told him to take it up on appeal if he didn't like it. So Mr. Schutzeus did. And the Pennsylvania Superior Court reversed the sentence. The trial judge then re-sentenced him to up to 37 years in prison. The Superior Court reversed again. The trial judge re-sentenced him to up to 13 years in prison. The Superior Court remained "frustrated" with the trial judge, but upheld the sentence because of a technical waiver argument.

But a few years later, on a post-conviction petition, the Superior Court took a closer look. In 2015, that court held that the trial court actually never originally imposed a "no contact with minors" condition as a term of probation. The trial judge had delegated to the probation office the job of coming up with

- 1 -

the terms of probation; because that violated a state statute, it invalidated the sentence.

In other words, Mr. Schutzeus had been serving a sentence for a crime that he didn't commit.   So the Superior Court vacated the conviction and sentence for probation violation.   Mr. Schutzeus was released from prison.   In the end, he served an extra nine years for an invalid probation-violation sentence.

After all this happened, Mr. Schutzeus came here, and filed a federal civil-rights lawsuit, taking aim at the state probation office and probation-office employees.  The crux of his claim is that these probation officers provided the state trial court with the wrong probation condition ("no contact with minors"), and then when Mr. Schutzeus violated that condition, these officers wrongly caused his detention and then recommended to the judge that probation be revoked.  From this core factual assertion, Mr. Schutzeus brings a wide array of constitutional and state-law claims.

Mr. Schutzeus, no doubt, was wronged.  He served nine years in prison for a violation that really wasn't one.  But even where there is a wrong, there sometimes isn't a remedy.  That is the situation here.  Most of the federal claims, and all of the state-tort claims, are barred by principles of sovereign immunity and Eleventh Amendment immunity.   And all of the probation officers here enjoy qualified immunity, since Mr. Schutzeus can point to no constitutional right or "clearly established" federal right that they violated.  A violation of a state statute does not count.

Additionally, the claims fail here because there is insufficient evidence to support many of them.  Indeed, Mr. Schutzeus filed no written response to Defendants' 201-paragraph concise statement of material facts and he provided no deposition testimony, responses to interrogatories, admissions, or

documents in response to Defendants' motion.  While the Court acknowledges that Mr. Schutzeus has been representing himself, that does not excuse the evidentiary burden he must meet to resist summary judgment.  Simply relying on arguments or allegations in the complaint (many of which are thin to begin with), as well as bald speculation, cannot defeat summary judgment.

For these reasons, the Court will enter judgment for Defendants.

## BACKGROUND

I.   **Factual background.**

A.   **The trial court sentences Mr. Schutzeus in 2001.**

In 2001, Mr. Schutzeus pleaded guilty in Pennsylvania state court to rape and other sexual-deviant crimes involving minors.  [ECF 82-14, p. 2].  On October 9, 2001, the state trial court sentenced Mr. Schutzeus to up to seven years in prison and seven years of probation.  [ECF 82-14, p. 2].  At the time of sentencing, the trial court delegated to the probation office or parole officer the duty of creating the probation terms and conditions.  [ECF 82-3, pp. 16-17 (The Court: " . . . plus, seven years probation, terms and conditions to be set by the Probation Office or Parole Officer, whoever is going to do that.")].  Importantly, the trial court never included in the sentence or specifically ordered that a condition of Mr. Schutzeus's probation be no contact with children.

B.   **The trial court revokes Mr. Schutzeus's probation in 2007.**

Mr. Schutzeus was released from prison on August 12, 2006 [ECF 82-6], having served the maximum seven-year sentence; he then began the seven-year probation sentence.  [ECF 82-14, p. 2].  A few days into his probation, probation officer Tracey O'Hara drafted "special conditions of parole," which Mr. Schutzeus signed off on and which included a prohibition on Mr. Schutzeus having any contact with minor children of his extended family, including nieces.  [ECF 92-1, p. 4; ECF 82-12, pp. 53-54].

Less than six months into his probation term, Mr. Schutzeus supposedly violated his probation by having contact with his young nieces.  [ECF 82-14, p. 2].

After finding out about Mr. Schutzeus's contact with his nieces, several probation-office employees, including probation officer Richard Novak and a supervisor, Steven Cubberly, were involved in drafting and signing a "special field report" that was submitted to the trial court on January 28, 2007.  [ECF 82-6].  This report included as a condition a "[p]rohibition on having any contact with children under the age of 18 years old."  [ECF 82-6].  The trial court signed off on the report.  [ECF 82-6].

Mr. Novak and another supervisor, Roberta Troy, investigated Mr. Schutzeus's conduct, and Ms. Troy recommended Mr. Schutzeus's arrest.  [ECF 92, p. 2].  Mr. Novak arrested Mr. Schutzeus on January 31, 2007 for violating the "no contact with minors" special condition in the special field report.  *See* [ECF 82-12, p. 9].  A "technical violation sheet" was then filed by either Mr. Novak or Ms. O'Hara (there is no signature block) with the trial court on February 11, 2007, which included a sentencing recommendation for a violation of the condition of "no contact w/ minors."  [ECF 82-7].

The trial court conducted a probation-revocation hearing on May 1, 2007, where Mr. Novak testified on behalf of the probation office.  [ECF 82-8, p. 3].  At the hearing, the trial court found Mr. Schutzeus in violation of his probation and sentenced him to term of incarceration of up to 50 years.  [ECF 82-14, p. 2].

## C.    Mr. Schutzeus files various appeals, and the Pennsylvania Superior Court declares his sentence to be invalid in 2015.

After he was sentenced for violating his probation, Mr. Schutzeus appealed, and the Superior Court vacated the sentence. *Pennsylvania v. Schutzeus*, No. 1009 WDA 2007, 981 A.2d 933 (Pa. Super. Ct. 2009).

The trial court conducted a new sentencing hearing on February 9, 2010, and sentenced Mr. Schutzeus to another term of incarceration, this time for up to 37 years. [ECF 82-14, p. 3]. Mr. Schutzeus appealed again, and the Superior Court again vacated the sentence. *Pennsylvania v. Schutzeus*, No. 526 WDA 2010, 26 A.3d 1212 (Pa. Super. Ct. 2011).

The trial court held a third sentencing hearing on June 28, 2011, and imposed a sentence of a term of incarceration, this time of up to 13 years. [ECF 82-14, p. 3]. Mr. Schutzeus appealed; and the Superior Court upheld the sentence because of a technical waiver argument. The Pennsylvania Supreme Court denied review. *See Pennsylvania v. Schutzeus*, No. 1219 WDA 2011, 54 A.3d 86, 88–89 (Pa. Super. Ct. 2012), *appeal denied*, 67 A.3d 796 (Pa. 2013).

In 2015, on a post-conviction petition, the Superior Court examined Mr. Schutzeus's sentence, this time through the lens of ineffective assistance of counsel. The Superior Court held that the trial court never originally imposed a "no contact with minors" condition as a term of probation. The probation conditions were only proposed to the court in the special field report prepared by probation-office employees years later. That was improper because a state statute requires the trial judge to impose a sentence, including any probation conditions; he was not allowed to delegate that job to probation officers. *Pennsylvania v. Schutzeus,* No. 1895 WDA 2013, 2015 WL 6467693, at *6 (Pa. Super. Ct. Oct. 7, 2015) ("The field report was nothing more than a summary of appellant's conditions of supervision, as contrasted with conditions of

probation, which are required to be imposed by the court."). Thus, Mr. Schutzeus never violated his probation at all, and the Superior Court found that his counsel was ineffective for failing to object to the trial court's errors during his original sentencing in 2001. *Id.*

Importantly, the Superior Court found the delegation to be, specifically, a violation of 42 Pa. Cons. Stat. § 9754(b), which states in relevant part that "[t]he court shall attach . . . reasonable conditions" of probation "as it deems necessary to ensure or assist the defendant in leading a law-abiding life." In reaching this conclusion, the Superior Court relied on *Pennsylvania v. Vilsaint*, 893 A.2d 753 (Pa. Super. Ct. 2006), and *Pennsylvania v. MacGregor*, 912 A.2d 315 (Pa. Super. Ct. 2006), which also examined Section 9754 and effectively held that trial courts cannot delegate the imposition of probation conditions to probation officers under this statute. *See Schutzeus*, 2015 WL 6467693, at *5-6.

The Superior Court reversed the trial court and vacated Mr. Schutzeus's revocation sentence. It remanded to the trial court to make a determination on Mr. Schutzeus's discharge from custody. *Id.* at *7.

On May 10, 2016, the trial court vacated the prior sentences and re-imposed the original sentence from 2001. [ECF 82-15]. It ordered Mr. Schutzeus's release from custody. [ECF 82-15]. He was released on May 11, 2016, having served an additional nine years in prison for a probation violation that was not actually a violation. [ECF 82-25].

## II. Procedural background.

After his ordeal in state court, Mr. Schutzeus came to federal court to seek relief. He filed his original complaint on April 18, 2017 [ECF 3] and an amended one on March 20, 2018 [ECF 30], alleging various federal and state-law claims against the Pennsylvania Department of Corrections, several DOC

employees, the Pennsylvania Board of Probation and Parole (which is the statewide probation office and which is referred to in this opinion as "probation office"), and probation-office employees Joe Tuttle, Roberta Troy, Richard Novak, Steven Cubberly, and Tracey O'Hara.

On June 21, 2019, Mr. Schutzeus moved for leave to file a second amended complaint, which the Court has granted contemporaneously with this opinion. [ECF 85]. That second amended complaint withdraws all claims against the DOC, DOC employees, and one probation-office employee, Mr. Tuttle.[1] It also adds a cause of action for abuse of process. [ECF 85-2; ECF 93].[2]

Thus, Mr. Schutzeus alleges the following causes of action against the following Defendants: (1) civil conspiracy against Ms. Troy, Mr. Novak, Mr. Cubberly, and Ms. O'Hara predicated on federal and state due-process violations; (2) a *Monell* claim against the probation office; (3) Fourth Amendment and Fifth/Fourteenth Amendment unlawful seizure/false arrest and due-process claims against Ms. Troy, Mr. Novak, Mr. Cubberly, and Ms. O'Hara; (4) state-law malicious prosecution against all Defendants; (5) state-law intentional infliction of emotional distress against all Defendants; (6) state-law false imprisonment against Ms. Troy, Mr. Novak, and Mr. Cubberly;

---

[1] Generally, Mr. Schutzeus's claims against the DOC and its employees were that they failed to timely alert him to the 2015 Superior Court decision, which allegedly resulted in him spending seven extra months in prison. [ECF 30, p. 9, ¶¶ 33-35].

[2] Mr. Schutzeus filed two versions of his second amended complaint, which have a few slight differences. *See* [ECF 85-2; ECF 93]. For example, one version of his complaint has a claim for false imprisonment, and the other does not. Because Mr. Schutzeus is proceeding *pro se*, the Court will construe the two versions together and take an expansive view of his claims.

and (7) state-law abuse of process against Ms. Troy, Mr. Novak, and Mr. Cubberly. [ECF 85-2; ECF 93].

Discovery has concluded, and both sides filed dispositive motions. Mr. Schutzeus filed a summary-judgment motion on April 30, 2019 [ECF 76], including a 15-page brief, an 8-paragraph concise statement of material facts, and three exhibits. *See* [ECF 78; ECF 77; ECF 78-1; ECF 78-2; ECF 78-3]. On July 1, 2019, he moved to amend his summary-judgment motion [ECF 88], which included a similar 15-brief, similar 8-paragraph concise statement of material facts, and a supplemental appendix of two exhibits. *See* [ECF 89; ECF 90; ECF 92; and ECF 92-1].

Mr. Schutzeus argues that the principle of offensive collateral estoppel applies such that the Court must find that Defendants arrested and detained him unlawfully and without probable cause. [ECF 89, pp. 3-5, ¶¶ 7-11]. In support of this argument, Mr. Schutzeus relies on the 2015 Superior Court decision, and argues that that decision conclusively established the absence of probable cause for Defendants here in detaining him and charging him with a probation violation.

Defendants filed a motion for summary judgment on June 6, 2019 [ECF 79], appending a 38-page brief, a 201-paragraph concise statement of material facts, and an appendix of 25 exhibits. [ECF 80, 81, 82]. The general bases for Defendants' motion are that several immunity doctrines bar Mr. Schutzeus's claims and that there is insufficient evidence of personal involvement by the various probation officers for Mr. Schutzeus's claims to withstand summary judgment. [ECF 80]. Mr. Schutzeus responded to Defendants' motion with an 18-page brief, but no competing evidence. [ECF 91]. He filed no written response to Defendants' 201-paragraph concise statement of material facts and provided no deposition testimony, responses to interrogatories, admissions, or

documents in response to Defendants' motion, aside from the two exhibits he attached to his amended summary judgment motion. [ECF 92].

The motions are fully briefed, and will be adjudicated based on the claims and allegations of the second amended complaint.

## III.  The material evidence on summary judgment.

While the Court has carefully reviewed and considered all evidence submitted, it appears that the key, material evidence that is at issue is: (1) Mr. Schutzeus's deposition transcript [ECF 82-12]; (2) the August 2006 special conditions of parole [ECF 92-1]; (3) the January 28, 2007, special field report [ECF 82-6]; (4) the February 11, 2007, technical violation sheet [ECF 82-7]; (5) the February 16, 2007, technical violation arrest report [ECF 92, p. 2]; and (6) the October 2015 Superior Court opinion.  [ECF 82-14].

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  At summary judgment, the inquiry is whether the evidence presents "a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  In making this determination, a court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007).

If the moving party shows a lack of genuine issue of material fact, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citation omitted).  If the non-moving party "fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. *Celotext Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, the local rules for the Western District of Pennsylvania expressly require that the party opposing a motion for summary judgment file a responsive concise statement of material facts, which specifies whether the other party's statement of facts is admitted or denied, and sets forth, in separately numbered paragraphs, the basis for such denial with citation to the record. *See* Local Rule 56.1(C)(1). When a party fails to specifically deny or controvert alleged facts in a separate concise statement, with proper citations to the record, those facts are deemed to be admitted. *See Holman v. Hogue*, No. 11–1269, 2013 WL 941801, at *1 (W.D. Pa. Feb. 15, 2013) (Eddy, J.) ("Plaintiff did not file any concise counter statement of facts; nor did he specifically dispute Defendants' Statement of Facts with any citations to record evidence. Consequently, in accordance with our Local Rules, all factual averments contained in the Defendants' CSMFs will be deemed admitted for purposes of summary judgment."); *accord Enigh v. Miller*, No. 08–1726, 2010 WL 2926213, at *4 (W.D. Pa. July 23, 2010) (Fischer, J.) (collecting cases).

## DISCUSSION & ANALYSIS

**I.   Mr. Schutzeus has withdrawn his Department of Corrections claims and claims against Defendant Joe Tuttle.**

As discussed above, Mr. Schutzeus's second amended complaint withdraws certain claims, including all claims against the Pennsylvania Department of Corrections, DOC employees, and probation-office employee, Joe Tuttle. [ECF 93; ECF 85-2]. Thus, judgment will be entered in favor of those Defendants and on those causes of action.

The second amended complaint adds a cause of action for abuse of process [ECF 93, p. 4, ¶¶ 38-39; ECF 85-2, p. 10, ¶¶ 38-39], which means that seven causes of action remain as against five Defendants.  *See* [ECF 93, ECF 85-2].  The remaining claims and relevant Defendants are as follows:

- **Abuse of process:**  Defendants Troy, Novak, and Cubberly
- **False imprisonment:**  Defendants Troy, Novak, and Cubberly
- **Malicious prosecution:**  All Defendants
- **Intentional infliction of emotional distress:**  All Defendants
- **Civil conspiracy:**  Defendants Troy, Novak, Cubberly, and O'Hara
- ***Monell:***  Pennsylvania Board of Probation and Parole
- **Unlawful seizure/false arrest:**  Defendants Troy, Novak, Cubberly, and O'Hara

## II.   The four state-law claims are barred by sovereign immunity and the Eleventh Amendment.

Mr. Schutzeus's four state-law claims are barred by sovereign immunity and the Eleventh Amendment.  Thus, his claims for abuse of process, false imprisonment, malicious prosecution, and intentional infliction of emotional distress are barred.

### A.   Sovereign immunity bars all state-law claims.

Pennsylvania has a comprehensive tort claims act that provides sovereign immunity for "the Commonwealth and its officials and employees acting within the scope of their duties."  1 Pa. Cons. Stat. Ann. § 2310.  "The probation department is an arm of the state, and its employees are state actors, making them subject to sovereign immunity."  *Clark v. Conahan*, 737 F. Supp. 2d 239, 258 (M.D. Pa. 2010).  This immunity applies even to intentional torts committed by Commonwealth defendants acting in their individual capacity. *See Balsam v. Sec'y of N.J.*, 607 F. App'x 177, 183 (3d Cir. 2015) ("[S]tate

officials are immune from suits in federal court based on violations of state law, including suits for prospective injunctive relief under state law, unless the state waives sovereign immunity.") (citation omitted); *Talley v. Pillai*, No. 2:18-cv-1060, 2019 WL 6701346, at *4 (W.D. Pa. Dec. 9, 2019) (Eddy, J.) ("Unless otherwise waived, the Commonwealth of Pennsylvania, its agencies, and its employees acting within the scope of their employment enjoy sovereign immunity.  There is no waiver of sovereign immunity for intentional torts.").

In determining whether sovereign immunity applies, the analysis is two-fold—first, the Court examines whether the claims fall within one of the statutory exceptions; and second, the Court examines whether the officials' conduct occurred within the scope of their employment.

First, none of the claims here are covered by a statutory exception.  There are nine exceptions to sovereign immunity, and none of them apply here.  *See* 42 Pa. Cons. Stat. Ann. § 8522(b)(1)-(9) (exceptions are in motor vehicle operation, medical malpractice, care of personal property, dangerous conditions of real estate, dangerous conditions of highways, care of animals, liquor store sales, the activities of the National Guard, and the administration, manufacture, and use of a toxoid or vaccine).  Indeed, courts in this Circuit frequently dismiss claims for abuse of process, false imprisonment, malicious prosecution, and intentional infliction of emotional distress, as being barred by sovereign immunity.  *See, e.g., Gregg v. Pettit*, No. 07–1544, 2009 WL 57118, at *7 (W.D. Pa. Jan. 8, 2009) (McVerry, J.) ("As for Defendants McElhaney and Leary, they enjoy sovereign immunity from the state law claims of abuse of process, malicious prosecution, false arrest and intentional infliction of emotional distress."); *Becker v. Godboldte*, No. 1:10–CV–2066, 2011 WL 2015213, at *8 (M.D. Pa. May 24, 2011) ("Because the grant of sovereign immunity covers Defendant's actions at all relevant times, Counts III–V

[Malicious Prosecution, Abuse of Process and IIED], to the extent they are asserting state law claims, are dismissed."); *Tingey v. Gardner*, No. 17-827, 2019 WL 6828638, at *3 (E.D. Pa. Dec. 13, 2019) ("Defendants argue that plaintiff's state law claim for false imprisonment . . . is barred by Pennsylvania's sovereign immunity statute. The Court agrees with defendants.") (citation omitted).

Second, all alleged acts committed by the probation officers—Defendants Troy, Novak, Cubberly, and O'Hara—occurred within the scope of their employment as probation-office officials (to the extent that any acts are alleged at all). "Under Pennsylvania law, an action falls within the scope of employment if it: (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpectable by the employer." *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010) (citation omitted). The first of these three factors are relevant to this case, and applying them here, the Court finds that Defendants acted within the scope of their employment.

Under the first part of the test, the conduct at issue was of the kind that probation officials perform. That is, the conduct here concerned probation officers monitoring and enforcing the terms of probation. The probation officers carried out that conduct by submitting documents, such as a special field report, violation report, and arrest report. All of these documents are on what appear to be probation-office forms. *See* [ECF 82-6; ECF 82-7; ECF 92, p. 2]. The probation officers' actions of advising the state trial court on terms of probation, supervising those terms, arresting a defendant for violating a term, and then participating in a hearing to enforce that term are all conduct

of a "kind" expected from probation officers.  *See, e.g., McBride v. Cahoone*, 820 F. Supp. 2d 623, 637 (E.D. Pa. 2011) (describing probation officer functions such as investigating allegations of probation violations and crimes, typing and signing warrants for arrests, and recommending whether to revoke probation); *Breslin v. Brainard*, No. 01–CV–7269, 2002 WL 31513425, at *7 n.10 (E.D. Pa. Nov. 1, 2002) (same).

Under the second part of the test, the drafting and imposition of probation terms occurred "substantially within the job's authorized time and space limits." *Mitchell*, 680 F. Supp. 2d at 682.  Mr. Schutzeus does not argue otherwise.

Under the third part of the test, the actions of the probation officers were motivated at least in part by a desire to serve their "employer."  Under Pennsylvania law, probation officers can wear different hats, and can serve different "employers" depending on the job they are doing.  For example, they can serve law enforcement, they can serve county probation officials, and they can serve victims.  42 Pa. Cons. Stat. Ann. § 8332.7.  As relevant here, probation officers can also serve at the direction of trial courts.  As the Third Circuit has recognized, state and county probation officers are Commonwealth employees and provide assistance to Pennsylvania's unified court system under the direction of a common employer—the Commonwealth.  *See Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) ("We have held that Pennsylvania's judicial districts, including their probation and parole departments," are "part of the Commonwealth government[.]").  The evidence in this case establishes that the probation officers were acting here to serve their "employers"—*i.e.*, the probation office and, more directly, the state trial court.

Mr. Schutzeus argues, or at least hints at the argument, that the probation officers were not acting within their scope of employment because of what the Superior Court found in 2015 in his case. That is, the Superior Court held that trial judges, under a state statute, must impose a sentence of probation; they cannot delegate that task to probation officers. From this holding, Mr. Schutzeus infers that the probation officers here were performing "extra-judicial" functions and could not have been acting within the scope of their employment. [ECF 89, p. 13, ¶ 47]. This argument misses the mark for two reasons.

First, that the trial court lacked actual authority to delegate sentencing to the probation officers does not mean that the probation officers were acting outside of their scope of employment. The "scope" issue is based on agency law, and as the Third Circuit has recognized, Pennsylvania courts look to the Restatement of Agency to determine whether a servant (employee) is working at the direction of his master (employer). *See Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000).

Under the Restatement, a master can be liable for a servant's conduct if the servant is acting not only with actual authority from his master, but also "apparent authority." "Apparent authority results from a manifestation by a person that another is his agent[.]" Restatement (Second) of Agency § 8 (Apparent Authority), cmt. a.

Here, it was clear and reasonable for the probation officers and all involved to understand that the trial court had authority to delegate its sentencing decision to probation officers—indeed, the trial court said as much as part of the sentence, expressly authorizing the probation officers to impose terms of probation. *See* [ECF 82-3, pp. 16-17 (The Court: " . . . plus, seven years probation, terms and conditions to be set by the Probation Office or Parole

Officer, whoever is going to do that.")].   Thus, the probation officers here were acting on behalf of and to serve the trial court.   It does not matter that the trial court ultimately lacked the authority it delegated; what matters is that it was delegated.

The flaw in Mr. Schutzeus's argument is illustrated by a more common application of agency law, which involves assessing liability.   The principles of agency law are oftentimes applied to determine whether the conduct of a servant is binding on the master so as to impute liability to the master for the servant's conduct.   If a servant is doing something that the master does not authorize him to do, then the master would argue that he should not be liable for the misdeeds of the servant.   But where the master claims to have authority and expressly delegates that authority to a servant, there is no doubt that the master would be liable for the conduct of his servants.   *See* Restatement (Third) of Agency § 7.03 (Principal's Liability—In General).

That's what makes Mr. Schutzeus's argument ill-fitting.   A master that delegates authority that he does not have is a consideration that is irrelevant to the scope issue.   In the liability context, he cannot avoid any imputed liability by claiming that he delegated a right he was not permitted to delegate. So long as the servant is acting at the direction of a master, based on either that master's actual or apparent authority, the servant acts within the scope of duties that are traced back to the master.   *See id.*   So too here.   Because the probation officers were acting at the direction of the apparent authority of the trial court, they were acting within their scope of delegation.

Second, even if there were some doubt over the scope of what the trial court authorized the probation officers here to do, under Pennsylvania law, "even unauthorized acts may be within the scope of employment 'if they are clearly incidental to the master's business.'"   *See Brumfield*, 232 F.3d at 381

- 16 -

("Brumfield's complaint asserts that during the course of the investigation, the individual defendants were encouraged to come forward and asked to and did sign affidavits which he alleged contained false facts about him.  Thus, even assuming the statements were false, plaintiff's allegation squarely makes the individual defendants' conduct incidental to BOP's business[.]"); *Aliota v. Graham*, 984 F.2d 1350, 1359 (3d Cir. 1993) (even false statements in a defamation case may be considered as conduct within an employee's scope of employment).

All of the probation-office Defendants' conduct was, at a minimum, "clearly incidental" to the duties of the probation office and the trial court's commands.  As noted above, the conduct involved imposing conditions of probation, monitoring those conditions, enforcing those conditions, and prosecuting those conditions.  Every act was clearly incidental to well-defined duties of the probation office and the trial court.  As such, the probation officers were operating within the scope of their employment.

In sum, because Mr. Schutzeus's state-law claims do not fall within a statutory exception and concerned conduct within the probation officers' scope of employment, the claims are barred by sovereign immunity.

**B.    The Eleventh Amendment bars certain state-law claims.**

Some of Mr. Schutzeus's state-law claims are against the probation office itself, and some against the probation officers in their "official capacities." Both categories of claims are barred by the Eleventh Amendment.  Unless the state consents, the Eleventh Amendment bars suits against a state in federal court either for damages or injunctive relief.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984).  This is true whether suit is brought under federal law or state law.  *Id.* at 117.  Thus, "the Eleventh Amendment strictly bars suits in federal court against state agencies or state officials for

violations of state law[.]" *Larsen v. State Emps.' Ret. Sys.*, 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008) (citing *Pennhurst*, 465 U.S. at 105-06). To the extent that state-law claims are brought against the probation office and the individual Defendants in their official capacity, those claims are barred. *See Dill v. Oslick*, No. Civ. A. 97–6753, 1999 WL 508675, at *3 (E.D. Pa. July 19, 1999) ("The Pennsylvania Board of Probation and Parole and its employees in their official capacities are an arm of the Commonwealth entitled to Eleventh Amendment immunity.").

Accordingly, due to the application of sovereign immunity and the Eleventh Amendment, judgment will be entered in favor of Defendants on all of Mr. Schutzeus's state-law tort claims. All that remains, then, are the three federal claims for civil conspiracy, *Monell* liability, and unlawful seizure/false arrest under the Fourth and Fifth/Fourteenth Amendments.

## III.  The federal conspiracy and *Monell* claims fail for lack of evidence.

The conspiracy and *Monell* claims fail for lack of evidence. Indeed, based on the operative complaint and the thin evidentiary record as presented to this Court, the following appears to be the only involvement of the individual Defendants in revoking Mr. Schutzeus's probation:

(1)  The trial court inappropriately delegated to Ms. O'Hara the task of creating probation terms when Mr. Schutzeus was released from prison, and that is where a no-contact probation term originated. [ECF 82-3, pp. 16-17; ECF 92-1, p. 4; ECF 82-12, pp. 53-54].

(2)  Upon learning of Mr. Schutzeus's contact with his nieces, Messrs. Novak and Cubberly filled out and signed the January 28, 2007, special field report, which included the "no contact with minors"

- 18 -

probation term.  They gave this document to the trial court, who signed it.  [ECF 82-6].

(3)   Ms. Troy and Mr. Novak investigated, and Ms. Troy made the recommendation to arrest Mr. Schutzeus.  Mr. Novak arrested Mr. Schutzeus.  *See* [ECF 92, p. 2; ECF 82-12, p. 9].

(4)   A technical violation sheet was filed by the probation office, seemingly by Ms. O'Hara or Mr. Novak, with the trial court on February 11, 2007, which included a sentence recommendation for a violation of "no contact w/ minors."  [ECF 82-7].

(5)   The court held a probation revocation hearing on May 1, 2007, where Mr. Novak testified for the probation office, establishing a violation.  [ECF 82-8, p. 3].

With this being the only established conduct at issue, the conspiracy and *Monell* claims simply cannot survive.  Put differently, Mr. Schutzeus has not set forth sufficient evidence supporting his claims to resist summary judgment.

## A.   The conspiracy claim fails for lack of evidence.

For conspiracy, Mr. Schutzeus has put forward no evidence of an agreement between the probation-office employee Defendants.  That's a problem.  "To prevail on a conspiracy claim, the plaintiff must present evidence of an agreement—the sine qua non of a conspiracy, as it is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Eichelman v. Lancaster Cnty.*, 510 F. Supp. 2d 377, 392-393 (E.D. Pa. 2007) (cleaned up).

Mr. Schutzeus alleges that Defendants "conspired to have Plaintiff imprisoned by producing a Special Field Report containing 'extra-judicial probation sanctions', using an unlawful process for a lawful purpose, as the

vehicle for finding a violation of probation and imprisoning him." [ECF 85-2, p. 6, ¶ 21]. However, Mr. Schutzeus provides no evidence of an agreement among the probation officers to do anything. At his own deposition, Mr. Schutzeus could only describe the individual conduct of each Defendant, and could not describe how or when the Defendants conspired. *See* [ECF 82-12, p. 51 (Q. "What evidence of a conspiracy do you have for Defendants Richard Novack, Roberta Troy, . . . Tracey O'Hara and Steven Cubberly in your case?" A. "Well, Richard Novack was the field agent who detained me. Tracey O'Hara was also my PO, who was a field agent. Roberta Troy was a supervisor. . . . and I believe Steven Cubberly is also an administrative personnel from the Department of Probation and Parole.")].

Indeed, Mr. Schutzeus only succeeds at tying two probation officers (Messrs. Novak and Cubberly) to the special field report, and that is because their signatures are on the face of the document. [ECF 82-6]. Mr. Schutzeus has no additional evidence of conspiracy. *See* [ECF 82-12, p. 54 (Q. "Are you aware of any actions that Mr. Cubberly took personally related to your case?" A. "No, ma'am.")]. Two signatures on a document simply is not evidence of a larger agreement among all four individuals to violate Mr. Schutzeus's constitutional rights.

To be clear, to show a conspiracy, a plaintiff doesn't have to show direct evidence. The Third Circuit has stated that for a Section 1983 conspiracy claim, the plaintiff need not prove an actual agreement through direct evidence—he can rely on circumstantial evidence of an agreement. In the absence of direct proof, a "meeting of the minds" or "understanding or agreement to conspire" can be inferred from circumstantial evidence. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018). "Such circumstantial evidence may include that the alleged conspirators did or said

something to create an understanding, the approximate time when the agreement was made, the specific parties to the agreement, the period of the conspiracy, or the object of the conspiracy." *Id.* (cleaned up).

Even so, Mr. Schutzeus points to no circumstantial evidence to show an agreement. He has not even provided evidence that the probation officers spoke or met at any time about his case, or even whether they all knew each other or worked together. He only has the documents that are evidence of his probation conditions and his arrest— *i.e.*, the forms that the probation-officers filled out and submitted to the trial court. He has not provided deposition testimony or written discovery responses of the officers to build any sort of circumstantial case of an agreement. He has not even argued or articulated a theory that would tie these probation officers together in any way. While the Court is sympathetic to the fact that Mr. Schutzeus is representing himself in this case, his *pro se* status does not excuse him from the obligation to conduct discovery or otherwise muster evidence to support his claims. *See Holman*, 2013 WL 941801, at *1 n.1 ("While pro se litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer.") (citation and quotation marks omitted). And without evidence of an agreement (direct or circumstantial), Mr. Schutzeus cannot establish a claim for civil conspiracy that survives summary judgment.

### B. The *Monell* claim fails for lack of evidence (and would also be barred by the Eleventh Amendment).

The *Monell* claim must also be dismissed, since to sustain such a claim, a plaintiff must establish: (1) the existence of a local government custom or policy; and (2) that the governmental employees violated the plaintiff's civil

rights while acting under this custom or policy. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Here, Mr. Schutzeus merely makes bald assertions in his complaint that the probation office enforced "policies, practices and/or customs" that added "extra-judicial sanctions to the period of time he was to serve on probation." [ECF 85-2, p. 6, ¶ 23]. However, he has provided no evidence on what those policies or customs were, where they are found, or how they were enforced. A plaintiff simply cannot rely on conclusory statements to oppose a motion for summary judgment, but must rely on evidence. *See Craig v. Collins*, No. 13-1873, 2013 WL 5271521, at *9 (E.D. Pa. Sept. 17, 2013) (defendants were entitled to summary judgment because plaintiff "produced no evidence to support his conclusory claim of *Monell* liability"); *Sanders v. City of Phila.*, 209 F. Supp. 2d 439, 442 (E.D. Pa. 2002) ("The plaintiff has failed to meet the standards of *Monell* . . . because no evidence has been offered by a City of Philadelphia policymaker which shows that [plaintiff's] injuries were a result of the City's 'policy' or 'custom.'").

The crux of Mr. Schutzeus's argument is that the Superior Court decisions in *Vilsaint*, *MacGregor*, and his own case are "evidence" of the official policy to add extra-judicial sanctions. [ECF 89, pp. 11-13, ¶¶ 37-45]. In its 2015 opinion, the Superior Court cited *Vilsaint* and *MacGregor*, which are two 2006 Superior Court decisions that effectively held that trial courts could not delegate the imposition of probation conditions to probation officers. Thus, according to Mr. Schutzeus, the imposition of probation conditions in his case (which happened in late 2006 and early 2007), and these two other 2006 cases, demonstrate a pattern or a policy of misconduct.

Simply citing *MacGregor* and *Vilsaint*, with nothing more, is insufficient to prove any type of policy or custom. From a review of these cases, it is unclear

what exactly happened, and if probation officers were acting under the same alleged policies that would apply to Mr. Schutzeus's case. For example, in *Vilsaint*, it is unclear whether the probation officer was a Pennsylvania Board of Probation and Parole official or a county official. In fact, in that case, it appears that the condition of probation was imposed by a Franklin County-specific form or policy, not a statewide probation-office policy. *See Vilsaint*, 893 A.2d at 756 ("[W]e question why Franklin County has gone to the trouble and expense of pre-printing that information on a court order."). Without actual evidence from those cases of the policies, Mr. Schutzeus cannot meet his burden of proof at this stage.

But even if Mr. Schutzeus could meet his evidentiary burden to resist summary judgment, the *Monell* claim fails because the probation office is entitled to Eleventh Amendment immunity. The claim is only against the probation office, which is an arm of the Commonwealth, not a municipality or local government. *See Hafer v. Melo*, 502 U.S. 21, 25-27 (1991); *Harris v. Zappan*, No. Civ. A. 97-4957, 1999 WL 360203, at *2 (E.D. Pa. May 28, 1999) ("The Pennsylvania Board of Probation and Parole is an arm of the Commonwealth of Pennsylvania entitled to assert the Eleventh Amendment."); *Wood v. Pa. Bd. of Prob. & Parole*, No. 08-76J, 2009 WL 1913301, at *3 (W.D. Pa. 2009) (Gibson, J.) (same). State entities, such as the probation office, are immune from *Monell* liability. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989) ("States are protected by the Eleventh Amendment while municipalities are not, and we consequently limited our holding in *Monell* to local government units which are not considered part of the State for Eleventh Amendment purposes.").

Mr. Schutzeus attempts to get around this line of authority by arguing that Eleventh Amendment immunity does not apply because he is seeking

injunctive relief to enjoin the probation office from enacting its alleged policy. *See* [ECF 91, p. 8].

Initially, there is no evidence in the record that the probation office, to the extent that it once had an official policy of imposing conditions of probation, still has one now. Recall, Mr. Schutzeus's "evidence" of any policy is embedded in his own criminal case in 2006 and 2007 and two other 2006 cases that the Superior Court cited in its decision. But there is no evidence of an existing policy. This is important, because if the policy does not currently exist, then there is nothing to prospectively enjoin.

But even if Mr. Schutzeus could claim an entitlement to prospective injunctive relief, that doesn't save this claim. It is true that an exception to Eleventh Amendment immunity exists in specific circumstances permitting injunctive or declaratory relief against Commonwealth officials. *See Ex parte Young*, 209 U.S. 123, 188–89 (1908); *Pennhurst*, 465 U.S. at 102–03; *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). However, this exception does not apply to a federal claim against the probation office, since the probation office is not a Commonwealth official. It is the Commonwealth itself. *See Fenton v. Pa. Dep't of Corr.*, No. 18-5484, 2019 WL 398929, at *4 n.2 (E.D. Pa. Jan. 31, 2019) (refusing to apply Eleventh Amendment exception as against probation office, DOC, or state prison since plaintiff "has not named any individuals as defendants in this action"). Injunctive relief is not a loophole to skirt the Eleventh Amendment. The claim is barred.

## IV.   The remaining "unreasonable seizure, false arrest" claim fails.

As discussed above, judgment will be entered in favor of Defendants on the state-law claims and the federal conspiracy and *Monell* claims. Thus, at this point, the only claim that remains is the one for "unreasonable seizure,

false arrest." [ECF 85-2, pp. 7-8, ¶¶ 26-29]. This claim refers to both the Fourth Amendment and Fifth/Fourteenth Amendments, and it appears to be the underlying claim for Mr. Schutzeus's conspiracy claim, discussed above.

Construing this claim as liberally as possible, the Court will construe this as a claim for violation of the Fourth Amendment (for unlawful seizure) and Fifth Amendment/Fourteenth Amendment (for violation of procedural due process). It appears that Mr. Schutzeus alleges that the probation officers violated his Fourth Amendment rights by arresting him without probable cause, because the probation violation turned out to be invalid. And he alleges that the officers did not afford him due process because they, not the trial court, effectively imposed a condition of probation, denying him due process at his original sentencing hearing in 2001 to challenge the conditions.

The Court finds that this claim is barred based on qualified immunity. That is, Mr. Schutzeus cannot establish that the probation officers violated his constitutional rights, and cannot show that they violated a "clearly established" federal right. A violation of a state statute—which is what the Superior Court found in his case—is not tantamount to a violation of a federal right. This entitles the probation officers to qualified immunity.

## A. Qualified immunity bars the "unreasonable seizure, false arrest" claim as to the individual Defendants.

Under the qualified-immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *McBride v. Cahoone*, 820 F. Supp. 2d 623, 637 (E.D. Pa. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether defendants are entitled to qualified immunity, courts apply the

familiar two-part test in *Saucier v. Katz*, 533 U.S. 194 (2001), which asks: (1) whether the state actor violated a constitutional right, and (2) whether the right was clearly established. *See id.* at 202.

The individual Defendants here meet both prongs since they did not violate Mr. Schutzeus's Fourth Amendment (unlawful seizure) or Fifth/Fourteenth Amendment (procedural due process) constitutional rights, and neither of the rights were clearly established at the time that the conduct occurred in late 2006 and early 2007.[3]

### i.   Defendants did not violate Mr. Schutzeus's Fourth or Fifth/Fourteenth Amendment rights.

Mr. Schutzeus claims that the state officials violated his Fourth Amendment right by arresting and detaining him for a violation of an invalid probation condition.  A claim under Section 1983 for false arrest is grounded in the Fourth Amendment guarantee against unreasonable seizures.  *Garcia v. Cnty. of Bucks*, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)).  To maintain a false arrest claim, "a plaintiff must show that the arresting officer lacked probable

---

[3] In addition to qualified immunity, Ms. O'Hara would be entitled to absolute immunity since her role in drafting probation terms was purely adjudicatory. *See Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir. 1986) (probation and parole officers enjoy quasi-judicial immunity when engaged in "adjudicatory" duties). Ms. Schutzeus's theory against her is that the trial court improperly delegated to her the duty of coming up with the terms of probation, which she did.  [ECF 82-12, p. 53 (A: "Tracey O'Hara, being that she was my original PO and she set forth special conditions, you know when I was originally on probation, that is why she is listed here because she is at fault for what is that Section 9754, I believe.")].  That is clearly a quasi-judicial, adjudicatory function, since it should have been carried out by the trial court itself.  There is some uncertainty as to whether absolute immunity would apply to the other individual Defendants, given their roles in drafting the special field report and arresting Mr. Schutzeus.

cause to make the arrest." *Id.* "Probable cause exists when the totality of facts and circumstances are sufficient to warrant an ordinary prudent officer to believe that the party charged has committed an offense." *Id.; James v. City of Wilkes–Barre,* 700 F.3d 675, 680, 683 (3d Cir. 2012) (noting that lack of probable cause is an element of a Fourth Amendment false arrest claim).

Here, Mr. Schutzeus says there was no probable cause because his sentence turned out to be invalid. But probable cause is based on an objective standard based on all information available to the probation officers at the time. At the time of the arrest, it would have been objectively reasonable for the probation officers to detain Mr. Schutzeus for violating a term of his probation. That the sentence was later deemed to be invalid does not change the analysis; probable cause exists even if it later turns out that the information relied on was inaccurate. *See Wright v. City of Phila.,* 409 F.3d 595, 603 (3d Cir. 2005) ("The probable cause inquiry looks to the totality of circumstances; the standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility were, in retrospect, accurate."); *Kis v. Cnty. of Schuylkill*, 866 F. Supp. 1462, 1469 (E.D. Pa. 2001) ("It is well-settled that probable cause to arrest generally exists when a police officer makes an arrest pursuant to a warrant that meets the requirements of the Fourth Amendment.") (citations omitted).

Mr. Schutzeus has put forth no evidence that the probation officers lacked probable cause for the arrest in 2007 when he was alleged to have violated his probation. By contrast, the evidence put forward by Defendants establishes probable cause. By the time of his arrest, Mr. Schutzeus had had a Megan's Law hearing, where he was found to be a sexually violent predator [ECF 82-4, p. 2]; indeed, he is still subject to lifetime Megan's Law registration requirements. [ECF 82-15]. This means that, at the time of his arrest, Mr.

Schutzeus should have been prohibited from any contact with minors, as agreed to by the trial court that signed off on the special field report including the "no contact with minors" condition.  [ECF 82-6].  It took the Superior Court nine years after Mr. Schutzeus's arrest to conclude that no probation violation had occurred, and in the interim it even found that his sentence for the supposed violation was not unlawful.  *See Schutzeus*, 54 A.3d 86, 88–89 (Pa. Super. Ct. 2012), *appeal denied*, 67 A.3d 796 (Pa. 2013).

Based on the totality of these circumstances at the time of the incident, probable cause existed for Mr. Schutzeus's arrest.  Mr. Schutzeus cannot demonstrate a Fourth Amendment violation.

Additionally, Mr. Schutzeus brings a Fifth Amendment/Fourteenth Amendment claim for lack of procedural due process.  He does not explain the basis for this claim, other than to cite the Fifth and Fourteenth Amendments. *See* [ECF 85-2, p. 8, ¶ 29].   However, construing Mr. Schutzeus's claim liberally, he appears to be alleging that he was denied due process at his original sentencing hearing in 2001.  That is, when he was sentenced in 2001, the trial court was required to impose specific terms of probation at that time as part of the sentence; the trial court's decision to delegate that aspect of the sentence to the probation office denied Mr. Schutzeus an opportunity to be heard on that aspect of the sentence.

The Court will analyze Mr. Schutzeus's due-process claims under the Fourteenth Amendment because the Fifth Amendment's protections only apply to actions of the federal government, and Defendants here are state governmental officials.  *Rittenhouse Entertm't, Inc. v. City of Wilkes–Barre*, 861 F. Supp. 2d 470, 485–86 (M.D. Pa. 2012).

Fourteenth Amendment procedural due process creates a "guarantee of fair procedure" where an individual can assert that he was deprived of a life,

liberty, or property interest without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  To prevail on a procedural due-process claim, a litigant must show: (1) that the state deprived him of a protected interest in life, liberty, or property; and (2) that the deprivation occurred without due process of law. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir.1997).

Here, even assuming without deciding that Mr. Schutzeus had a protected liberty interest, he has failed to show how he was denied due process. At his original sentencing in 2001, Mr. Schutzeus was represented by counsel, who could have objected to the trial court's decision to delegate the conditions of probation. *United States v. Ausburn*, 502 F.3d 313, 322 (3d Cir. 2007) ("[D]ue process in criminal sentencing requires that a defendant receive notice of, and a reasonable opportunity to comment on, (a) the alleged factual predicate for his sentence, and (b) the potential punishments which may be imposed at sentence.").  And in 2007, when Mr. Schutzeus had his probation-revocation hearing, his counsel could have objected to the imposition of the sentence in resisting revocation.  *United States v. Barnhart*, 980 F.2d 219, 222 (3d Cir. 1992) (recognizing that revocation of probation is subject only to "minimum requirements of due process.").  Indeed, the Superior Court later decided that his counsel was ineffective for failing to raise such objections. *Schutzeus,* 2015 WL 6467693, at *6.  Mr. Schutzeus fails to show how the procedures in place did not comport with due process.  *See* [ECF 85-2, p. 8, ¶ 29; ECF 91, pp. 12-13, ¶¶ 30-32].

Even setting this aside, there is no evidence that the individual Defendants were the ones that denied Mr. Schutzeus due process.  If anything, Mr. Schutzeus's claim is that the trial judge deprived him of due process when he improperly delegated the probation terms and then later revoked his

probation and sentenced him—not the probation officers who drafted the probation terms, arrested him, and imposed the terms of a sentence as instructed by the trial judge.

Thus, there was no violation of any constitutional right, meaning that the individual Defendants are entitled to qualified immunity under the first prong of the *Saucier* test.

### ii. Defendants did not violate a "clearly established" federal right.

Under the second *Saucier* prong, the probation officers are further entitled to qualified immunity because they did not violate a "clearly established" federal right.[4]

A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201. The court must consider "the state of the existing law at the time of the alleged violation and the specific circumstances confronting the officer."

---

[4] The Court notes that the judge-made doctrine of qualified immunity has, in recent years, faced a groundswell of increased scrutiny and criticism in the courts. *See, e.g., Ventura v. Rutledge*, 398 F. Supp. 3d 682, 697 n.6 (E.D. Cal. 2019) ("[T]his judge joins with those who have endorsed a complete re-examination of the doctrine which, as it is currently applied, mandates illogical, unjust, and puzzling results in many cases."); *Manzanares v. Roosevelt Cty. Adult Det. Ctr.*, 331 F. Supp. 3d 1260, 1294 n.10 (D.N.M. 2018) ("Judges and scholars alike have thus increasingly arrived at the conclusion that the contemporary doctrine of qualified immunity is unmoored from any lawful justification.") (citation and quotation marks omitted); *Zadeh v. Robinson,* 928 F.3d 457, 480-81 (5th Cir. 2019) (Willet, J., concurring-in-part and dissenting-in-part) ("Indeed, it's curious how this entrenched, judge-created doctrine excuses constitutional violations by limiting the statute Congress passed to redress constitutional violations."). The Court shares many of the same concerns. Nevertheless, unless and until the Supreme Court reconsiders its approach, this Court is bound by its view of the doctrine. *See D.C. v. Wesby*, 138 S. Ct. 577, 591 (2018); *Stanton v. Sims*, 571 U.S. 3, 6 (2013). This case is resolved by its straightforward application.

*Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010) (cleaned up).  If the state officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," he is shielded from liability.  *Harlow*, 457 U.S. at 818.

Importantly, the law is only "clearly established" when "the contours of the right are sufficiently clear that a reasonable official would understand that his conduct violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 649 (1987) (cleaned up).  This means that "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited."  *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001).  The Supreme Court has emphasized that "existing precedent must have placed the statutory or constitutional question beyond debate."  *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (cleaned up).  Courts look first for applicable Supreme Court precedent, but if none exists, they may rely on a "robust consensus of cases of persuasive authority" in the Courts of Appeals.  *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (cleaned up).  Here, there was no "clearly established" right for at least four reasons.

First, while Mr. Schutzeus relies only on state-court opinions to demonstrate a clearly established right, it is unclear whether the Court can even examine state-court opinions for that purpose.  Mr. Schutzeus points to the Superior Court's decision in his own case—and, more specifically, to the two 2006 Superior Court decisions cited in that decision (*MacGregor* and *Vilsaint*) to show that there was a right in 2006, which those decisions clearly established.  But there is a circuit split on whether state-court opinions bear on the qualified-immunity analysis.

For instance, the Eighth and Ninth Circuits look to all decisional law, including state-court opinions, for determining clearly established rights. *See Hayes v. Long*, 72 F.3d 70, 73–74 (8th Cir. 1995); *Tribble v. Gardner*, 860 F.2d 321, 324 (9th Cir. 1988). By contrast, the Fourth, Tenth, and Eleventh Circuits allow courts to examine decisions of the highest state courts, but seemingly not to intermediate state-appellate courts. *See, e.g., Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 594 (10th Cir. 1999); *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999); *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n. 4 (11th Cir. 1997). And the Sixth Circuit has held that a district court must find binding precedent from the Supreme Court or from itself—it does not look to state-court opinions at all. *See Ohio Civil Serv. Emps. Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988).

This Court, of course, is bound by the Third Circuit, but the Third Circuit's opinions are somewhat unclear on this point, or have, at least, never directly spoken to this issue. The Third Circuit has mostly instructed district courts to use federal decisions, but the Court has also affirmed district courts' analyses predicated on an analysis of state law. *See, e.g., Spiker v. Whittaker*, 553 F. App'x 275, 277 (3d Cir. 2014); *Egolf v. Witmer*, 526 F.3d 104, 109–11 (3d Cir. 2008). In an opinion concurring in part and dissenting in part, Judge Garth interpreted *Doe v. Delie*, 257 F.3d 309 (3d Cir. 2001), as outlawing the use of state-law decisions in determining what qualifies as clearly established. *See Brown v. Muhlenberg Twp.*, 269 F.3d 205, 221 (3d Cir. 2001) ("In determining whether a legal principle is 'clearly established,' if we cannot look to state law, as we cannot, *see Doe v. Delie*, 257 F.3d 309, 2001 WL 817680 (3d Cir. July 19, 2001) ('officials do not forfeit qualified immunity from suit for violation of a federal constitutional right because they failed to comply with a clear state statute.') . . . ."). But *Delie* appears to focus on a different (albeit

related) issue—that is, whether violation of a state statute can serve as a violation of a clearly established federal right, not necessarily whether a district court can look to state-court decisions. *See Delie*, 257 F.3d at 319 (holding that "state statute cannot 'clearly establish' [a] federal right for qualified immunity purposes," unless that state statute creates a federally protected property interest).

Second, assuming that this Court could consider intermediate state-court decisions, the state-court decisions here fail to establish a violation of a clearly established ***federal*** right. On this point, the Third Circuit is clear. In *Delie*, the Third Circuit held that violations of a state statute do not count. *See id.* (the clearly established right "must be the federal right on which the claim for relief is based."). And that is all that *MacGregor* and *Vilsaint* establish—a trial court's delegation to probation officers to set conditions is a violation of a state statute, 42 Pa. Cons. Stat. § 9754, not a federal statutory or constitutional right. Those decisions would not place a probation officer in Defendants' shoes in 2006 or 2007 on notice that this conduct would violate a *federal* right. And even if the officer should have known that his conduct would violate a state-statutory right, that does not translate into knowledge that his conduct was a violation of federal law.[5]

---

[5] There is one notable exception to this rule. If a federal constitutional violation depends on a right created by state law, then a violation of state law may be relevant to the analysis. *See Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *cf. Burella ex rel. Burella v. City of Phila.*, No. Civ.A. 00–884, 2003 WL 23469295, at *8 (E.D. Pa. 2003) (finding that the Pennsylvania Protection from Abuse Act and protection from abuse orders were sources of a clearly established Fourteenth Amendment due-process right to police protection). This usually is the case for due-process claims involving deprivation of a property right, where the property right is defined by state law. This principle does not apply here, because 42 Pa. Cons. Stat. § 9754 is not a source of any federal constitutional right.

The federal constitutional issues at play here are unlike the state-law issues heard by the Superior Court in *Vilsaint* and *MacGregor*. Indeed, Mr. Schutzeus's own summary-judgment motion illustrates this very point. As discussed below, Mr. Schutzeus argues that offensive collateral estoppel applies based on the 2015 Superior Court ruling in his case and proves a constitutional violation. [ECF 89, pp. 3-4, ¶¶ 7-11]. But collateral estoppel cannot apply, in part, because the issues are not identical. The issue before the Superior Court in his case, and also in *Vilsaint* and *MacGregor*, was whether the judge in each instance violated 42 Pa. Cons. Stat. § 9754 by sentencing the defendant for violating probation terms imposed by probation or parole officers. The issue was never whether probation officers violated a federal right, let alone a clearly established federal right, by arresting and detaining defendants for violating improperly imposed probation terms.

Third, even if *Vilsaint* and *MacGregor* defined something expansive enough to be considered a federally protected right, they do not do so with enough precision. Courts must exercise care "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Instead, courts "must define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). Here, *Vilsaint* and *MacGregor* speak about an error in delegation. Those cases, interpreting 42 Pa. Cons. Stat. § 9754, tell trial courts what they can and cannot do when imposing a sentence of probation. They say nothing about what probation officers can and cannot do in arresting or detaining defendants under an improperly delegated sentence, or what process the probation officers must afford in such circumstances. That is the main focus of the conduct at issue, and *Vilsaint* and *MacGregor* do not specifically speak to it. They certainly don't speak to it in a way that would guide the conduct of probation

officers— which is the very purpose of the qualified-immunity standards. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.") (cleaned up).

Fourth, while Mr. Schutzeus has not pointed the Court to any federal law on this issue, federal cases concerning improper delegation by a sentencing judge exist. But those are inapposite. They hold that federal judges may not delegate sentencing to probation officials, but are based on Article III's requirement that federal judges cannot delegate their authority to decide "cases and controversies" to probation. *See, e.g., United States v. Pruden,* 398 F.3d 241, 250 (3d Cir. 2005); *United States* v. *Bernardine*, 237 F.3d 1279, 1283 (11th Cir. 2001); *United States v. Kent*, 209 F.3d 1073, 1078-79 (8th Cir. 2000); *United States v. Johnson*, 48 F.3d 806, 808-09 (4th Cir. 1995). Article III does not apply to state courts. So these cases, too, do not create a clearly established federal violation that would apply here.

For all of these reasons, the individual Defendants are entitled to qualified immunity from Mr. Schutzeus's unlawful seizure/false arrest claim (as well as all of the federal claims asserted against them).

## V.    Mr. Schutzeus's motion for summary judgment must be denied.

Finally, the Court will deny Mr. Schutzeus's motion for summary judgment. Mr. Schutzeus's motion asks for a declaration that offensive collateral estoppel applies. Mr. Schutzeus is asking the Court to find that, based on the Superior Court's 2015 decision in his case, there was no "lawful basis for arresting and prosecuting" Mr. Schutzeus "for violating terms of his probation." [ECF 89, p. 3, ¶ 7]. He makes this argument in order to conclusively establish the existence of a constitutional violation. [ECF 89, p. 4, ¶ 11].

To determine the application of collateral estoppel with respect to state-court decisions, the Court must apply state-law principles. *See Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 573 (3rd Cir. 2002) ("A federal court looks to the law of the adjudicating state to determine [a state-court decision's] preclusive effect.").

The legal standard for collateral estoppel under Pennsylvania law is: (1) the issue decided in the prior case must be identical to the one presented in the later case; (2) there was a final judgment on the merits in the prior action; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *See Rue v. K–Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998). Pennsylvania law is "not inconsistent" with federal decisions on collateral estoppel and privity, and courts in this Circuit consider federal "precedent to be persuasive in addressing collateral estoppel questions arising under Pennsylvania law." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009).

Collateral estoppel cannot apply in Mr. Schutzeus's favor for at least two reasons.

First, there is no identity of issues between the Superior Court case and this one. The issues must be identical, not just similar. *See Smith v. Holtz*, 210 F.3d 186, 196 (3d Cir. 2010) (finding that although the issues in Smith's state case and in his Section 1983 case were "tightly tethered," they were not identical for the purpose of collateral estoppel; the Section 1983 case presented the issue of whether a failure to disclose *Brady* material violated his due-process right to a fair trial, whereas the state court had "not address[ed] the due-process component" of the *Brady* violation); *Sarin v. McGee*, 284 F. Supp.

3d 736, 743 (E.D. Pa. 2018) ("Because the record raises the question of whether the Troopers had reasonable suspicion, but the State Judgment decided only that they lacked probable cause, the issues here and in the state case are not identical.").

As described above, the Superior Court simply found that Mr. Schutzeus's sentence was invalid because the trial court had violated 42 Pa. Cons. Stat. § 9754 by delegating the probation terms to the probation office. It did not find that individual probation officers acted unlawfully in arresting and prosecuting him, in violation of federal law or state-tort law.

Second, the Court cannot apply collateral estoppel because there is no privity of parties. Estoppel is limited by the due-process principle that a "judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 798 (1996) (citation omitted). There is generally a bar against applying collateral estoppel to those who were not parties in the prior litigation.

The individual Defendants were not parties to the state-court proceedings that culminated in the Superior Court's decision. Rather, that was a criminal case in which only the Commonwealth and Mr. Schutzeus were parties. The probation officers are not in privity with the Commonwealth so that collateral estoppel could apply against them. *See Smith*, 210 F.3d at 199 n.4 ("Smith's civil action is against the defendants in their individual capacities, but they are not in privity with the government in a prior criminal prosecution when sued in their individual capacities."); *Padilla v. Miller*, 143 F. Supp. 2d 453, 466 (M.D. Pa. 1999) ("It is clear that Trooper Miller was not a party to the criminal prosecution. Plaintiffs contend that Trooper Miller should be deemed 'in privity' with the Commonwealth of Pennsylvania, which

was a party to the criminal prosecution.  Plaintiffs, however, cite no authority that supports this proposition.  As noted above, a number of courts have concluded that police officers are not in privity with the state for purposes of offensive collateral estoppel.").

Thus, the Court will deny Mr. Schutzeus's motion for summary judgment for failing to meet the elements for collateral estoppel.

**<u>CONCLUSION</u>**

For all these reasons, Defendants' motion for summary judgment is GRANTED, and Mr. Schutzeus's motion for summary judgment is DENIED. Judgment will be entered in favor of Defendants on all counts of Mr. Schutzeus's second amended complaint.  An appropriate order follows.

DATED this 20th day of April, 2020.


BY THE COURT:


*/s/ J. Nicholas Ranjan*
United States District Judge